IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUBREY L. LOVE,<br><br>                    Petitioner,<br><br>          vs.<br><br>D. K. SISTO, Warden, California State Prison, Solano,<br><br>                    Respondent. | No. 2:08-cv-02056-JKS<br><br>MEMORANDUM DECISION |

Aubrey L. Love, a state prisoner appearing *pro se*, filed a Petition for Habeas Corpus Relief Under 28 U.S.C. § 2254. Love is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the California State Prison, Solano. Respondent (the "State") has answered, and Love has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

In February 1992 Love was convicted in the Alameda County Superior Court on a guilty plea of Murder in the Second Degree (Cal. Penal Code § 187) with a fire-arm enhancement (Cal. Penal Code § 12022.5). The Alameda County Superior Court sentenced Love to an indeterminate prison term of 15 years to life on the second-degree murder conviction and a determinate sentence of three years on the fire-arm enhancement, to be served consecutively. Love does not challenge his conviction or sentence in this proceeding.

In November 2007 Love appeared for his second successive parole-suitability hearing before the Board of Parole Hearings ("Board"). The Board, determining that Love would pose an

unreasonable risk of danger to society or a threat to public safety if released on parole, found

Love to be unsuitable for parole.  Love timely sought habeas corpus relief in the Alameda County

Superior Court, which denied his petition in an unpublished, reasoned decision.  Love's

subsequent petition for habeas relief was summarily denied by the California Court of Appeal

without opinion or citation to authority.  The California Supreme Court summarily denied review

without opinion or citation to authority on July 9, 2008.  Love timely filed his Petition for relief

in this Court on August 18, 2008.

     The facts of the commitment offense as recited by the Board are:

     On May 8th 1990, the police were called to the victim's (Patricia Churchill)
house.  When the police arrived, Patricia Churchill was bleeding from the back of
her head from a gunshot wound.  None of the neighbor's [*sic*] heard anything, but
they all identified Aubrey Love, the prisoner, as the victim's husband.  Witnesses
reported the victim and Love fought often.

     When the victim was taken to the hospital, it was determined she was
sixteen to twenty weeks pregnant.  The victim was placed on life support in an
attempt to save the life of the fetus.  Patricia Churchill, the victim, was finally
taken off life support after it was determined the fetus was not viable.

     During the investigation it was discovered that on November 11th 1989,
the victim filed a domestic violence dispute against Love.  Once [*sic*] witness
stated it was filed after cousins of  victim beat Love.  Another witness stated the
victim informed her that the victim was planning to leave Love and did not want
him to know.

     This same witness had seen Love approximately three weeks before the
murder, and Love had asked about the victim.  He stated 'Revenge is sweet'.
The witness also stated she heard sounds of fighting earlier in the evening of the
victim's death.

     When Love was first interviewed, he admitted to living with the victim on
a sporadic basis after meeting her at Herzog," H-E-R-Z-O-G, "an inpatient drug
rehabilitation program.  He admitted that he had a .32 caliber handgun, but it was
only an antique handgun.  He claimed he was home all day on the day of the
shooting and was not drinking.  He also claimed he did know the victim was
pregnant.

     He reported his relationship with her ended when he had an argument with
the victim and when her cousins had beat him.  He claims he assured the victim he
would press charges against her or her cousins in spite of the fact he was

hospitalized.  During another interview with Love, a request was made for the truth.

Love's response was, 'Request for the truth?  Okay, I'll confess.  She told me to come over and get the rest of my stuff.  I called her about 9 p.m.  She asked me to come and get the rest of my things.  I asked, 'is this another game?'  She said, 'No, just come over and get the rest of your shit'.  I went up the back steps.  The door was open.  She threw my shirt and underwear at me.  She spit at me and tried to kick me.  I fired once or twice and then left.  I slipped down the stairs.  I got up and started walking, and she was still hollering.  I had been drinking quite a bit that day.  I went by bus to her house and went back to my house by bus.  I threw two shells away and put two live shells in the gun'.

As to prisoner's version in the aforementioned board report, which I believe I did not indicate but, was prepared by P. Dupass, D-U-P-A-S-S, Correctional Counselor I.  As to prisoner's version, on page 2,

"Love was interviewed on June 18th 2001.  Love produced this statement.

'On May 8th 1990, about 9:30 or 10 p.m., I was asked by Pat over the phone to come and get the remaining things that she forgot to give me earlier.  As we talked, I asked her if there would be any problem.  Her answer was 'No'.  I must admit I was drinking a bit, and I truly forgot about the restraining order when I went to her apartment.

During the time we lived together I would carry a gun at times.  The night of the incident I was not carrying it to do harm to Patricia, because I cared for her even though we were no longer together.  As I came up the stairs, and got to the top of the stairs, the door came open.  She came out talking crazy.  She threw a few clothes and other items at me.  We got into a verbal argument.

As I was going back down the stairs, I was pushed, and I stumbled down the stairs.  Out of anger, I shot up at the door not knowing that she was peeping out of the door, and she was hit in the forehead with the bullet.  When the police picked me up in Berkeley, two days later, they took me to the Oakland Police Department for questioning.

At the beginning of the questioning, I started lying, because I didn't believe Patricia was injured.  As the interview continued, I realized she's been killed, and she was also pregnant.  The whole situation made me very sad, and it all seemed like a dream.  In all honesty, this incident was an unintentional accidental shooting.  But because of my mistakes, a person is dead as well as my child.  I'm truly sorry for the victim, her family and my child.

And during an interview with Love, on April 13th, 2007, he stated his version remains the same.[1]

---

[1] Docket No. 14-1, pp. 48-53.

After briefing was completed, the United States Court of Appeals for the Ninth Circuit, sitting en banc, decided *Hayward v. Marshall*.[2]  At Docket No. 23 this Court entered an Order directing the parties to file supplemental briefs addressing the *Hayward* decision, in particular that "[t]he prisoner's aggravated offense does not establish current dangerousness 'unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state' supports the inference of dangerousness."[3]  The Court also directed the parties to consider two Ninth Circuit Decisions applying *Hayward*.[4]  Both parties have submitted supplemental briefing.

## II.  GROUNDS RAISED/DEFENSES

In his Petition, Love raises three grounds:  (1) denial of parole violated his plea agreement; (2) denial of parole is not supported by "some evidence"; and (3) the Board regulation regarding parole plans violates the Administrative Procedures Act and due process of law.  The State has not raised any affirmative defense.[5]

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based

---

[2] 603 F.3d 546 (9th Cir. 2010) (en banc).

[3] *Hayward*, 603 F.3d at 562.

[4] *Pearson v. Muntz*, 606 F.3d 606 (9th Cir. 2010) (per curiam), and *Cooke v. Solis*, 606 F.3d 1206 (9th Cir. 2010).

[5] *See* Rules—Section 2254 Cases, Rule 5(b).

4

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[6]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[7]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[8]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[9]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[10]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[11]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected

---

[6] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[7] *Williams*, 529 U.S. at 412.

[8] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[9] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[10] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[11] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

the trial with unfairness as to make the resulting conviction a denial of due process.'"[12]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[13]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[14]

In applying this standard, this Court reviews the last reasoned decision by the state court.[15]  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[16]  This presumption applies to state trial courts and appellate courts alike.[17]

## IV.  DISCUSSION

Contrary to the State's argument, it is the law of this circuit, which this Court must follow, that the California parole scheme creates a liberty interest sufficient to trigger the due process clause.[18]

---

[12] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[13] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[14] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[15] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[16] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[17] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

[18] *Pearson*, 606 F.3d at 610-11.

6

<u>Ground 1:  Violation of Plea Agreement</u>

Love argues that, because it was his understanding and settled expectation at the time of entering his plea agreement that he would be granted parole at or near his minimum eligible parole date ("MEPD"), denial of parole violated his plea agreement.  The Alameda County Superior Court did not address this ground in its decision.  When there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must assume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.[19]  The scope of this review is for clear error of the state court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state court's decision, we can view it through the "objectively reasonable" lens ground by *Williams* . . . .  Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.  Only by that examination may we determine whether the state court's decision was objectively reasonable.[20]

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[21]

It is well settled that a plea agreement is a contract that must be honored by the state.[22]  In this case, however, Love reads his "contract" too broadly.  The proper interpretation and effect of the agreement between the State of California and Love in this case is a matter governed by

---

[19] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

[20] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

[21] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

[22] *See Santobello v. New York*, 404 U.S. 257, 262-63 (1971).

California contract law.[23]  What Love received in exchange for his guilty plea was a sentence of

18 years to life,[24] with a *possibility* of parole at some point after he had served his minimum

term.  Under California law, there is no guarantee of parole after a specified period of time, only

that a prisoner will be considered for parole and granted parole *only if*, in the exercise of the

discretion of the Board applying factors specified by regulations, he or she is found to be suitable

for parole.[25]  Although the plea colloquy is not included in the record before this Court,[26] Love

does not allege that there was any promise, actual or implied, of when, or under what terms or

conditions, he might be given parole, or, for that matter, that he would be granted parole at any

time, only his "settled expectation" that he would be.  "A plea agreement violation claim depends

upon the actual terms of the agreement, not the subjective understanding of the defendant . . . ."[27]

Nor does Love argue that any such agreement, if one did exist, would be enforceable under

California law.

       Accordingly, based upon the record before it, this Court cannot say the decision of the

Alameda County Superior Court in this case that denial of parole did not breach Love's plea

---

[23] *Ricketts v. Adamson*, 483 U.S. 1, 6 n.3 (1987).

[24] Because the maximum statutory term is life, contrary to Love's argument, the principles and holdings of *Blakely v. Washington*, 542 U.S. 296 (2005), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), are not implicated.

[25] *Cf. In re Lowe*, 31 Cal. Rptr.3d 1, 13 (Cal. App. 2005) (holding that when a defendant enters a guilty plea, he has no reasonable expectation regarding the identity of the person or persons who would exercise discretion in evaluating his suitability for parole, or that the person or persons would not change over time, citing *Rosenkrantz*, 59 P.3d at 193).

[26] The Exhibit Love refers to in his Request for Judicial Notice as the "Petitioner's Plea Agreement Proceedings," Exhibit A, is the transcript of the sentencing proceedings.  [Docket No. 2, pp. 5-7.]   Exhibit A does not address the terms of the plea agreement.

[27] *In re Honesto*, 29 Cal. Rptr.3d 653, 660 (Cal. App. 2005).

agreement was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[28]  Love is not entitled to relief under his first ground.

<u>Ground 2:  Denial Unsupported by Some Evidence</u>

Love argues that there is not "some evidence" sufficient to support the Board's denial of parole.  The Alameda County Superior Court rejected Love's arguments, holding:

> The Petition fails to state a prima facie case for relief.  Even though Petitioner has submitted numerous documents in support of his Petition, review of the transcripts provided and documents pertaining to the November 8, 2007 hearing, indicate that there was no abuse of discretion by the Board of Prison Terms.  The factual basis of the BPT's decision granting or denying parole is subject to a limited judicial review.  A Court may inquire only whether some evidence in the record before the BPT supports the decision to deny parole.  The nature of the offense alone can be sufficient to deny parole.  (<u>In Re Rosenkrantz</u> (2002) 29 Cal4th 616, 652, 658, 682.)  The record presented to this Court for review demonstrates that there was certainly some evidence, including, but not limited to the committing offense, Petitioner's criminal history showing an escalating pattern of violence, Petitioner's failure to take advantage of society's previous attempts to correct his criminality, Petitioner's limited participation in programming and self help programs and therapy, particularly in the areas of anger management and domestic violence, Petitioner's alcohol dependence and his seemingly limited knowledge and adoption of the 12 step program to maintain sobriety, Petitioner's apparent lack of candor and disingenuousness concerning his actions and intentions concerning the committing offense, certain issues raised in the report prepared by Dr. Richard Starrett, relating to Petitioner's attitude and behavioral patterns of domestic violence, and Petitioner's lack of sufficient parole plans.  There is nothing in the record indicating that the Board's decision was arbitrary or capricious, nor that Petitioner's equal protection or due process rights were violated.  Thus, Petitioner has failed to meet his burden of sufficiently proving or supporting the allegations that serve as the basis for habeas relief.[29]

---

[28] 28 U.S.C. § 2254(d).

[29] Docket 14-2, p. 21.

"When habeas courts review the 'some evidence' requirement in California parole cases, both the subsidiary findings and the ultimate finding of some evidence constitute factual findings."[30]  In the Order requesting supplemental briefing, this Court directed the State to "specifically identify those characteristics, other than the underlying commitment offense, that support a finding that release of the Petitioner to parole status poses a current threat to public safety, and point to the specific evidence in the record that supports that determination."[31]  In its supplemental response, the State argues that, in addition to the commitment offense, the Alameda County Superior Court relied upon Love's escalating criminal history and failure to profit from society's attempts to correct his criminality, limited participation in self-help programming, lack of candor and disingenuousness in addressing his actions in committing the offense, psychological concerns, and lack of adequate parol plans.

This Court must decide the case on the law as it exists at the time it renders its decision and, if the law changes while the case is pending, this Court applies the new rule.[32]  Thus, although it establishes a new rule, the holding in *Hayward* is controlling.  In this case, this Court "need only decide whether the California judicial decision approving the [Board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or 'was based on an unreasonable determination of the facts in light of the evidence.'"[33]  By its reference to § 2254(d), the Ninth Circuit implicitly, if not explicitly, directed

---

[30] *Cooke*, 606 F.3d at 1216.

[31] Docket No. 23, p. 2.

[32] *See Thorpe v. Housing Authority of City of Durham*, 393 U.S. 268, 281-82 (1969); *Lambert v. Blodgett*, 393 F.3d 943, 973 n.21 (9th Cir. 2004).

[33] *Hayward*, 603 F.3d at 563 (footnotes citing 28 U.S.C. § 2254(d) omitted).

this Court to apply § 2254(d) to the decisions of the California Supreme Court using the same standards as are applied to the determination of the law as established by the United States Supreme Court. Accordingly, under the mandate of *Hayward*, this Court must canvas and apply California law under the standard of review stated in Part III, above, as it existed at the time of the state court decision to the facts in the record as presented to the state court.

The mandate in *Hayward* is that this Court must review the decisions of state courts applying state law—in effect serving as a super-appellate court over state court decisions. This is in tension with the holdings of the Supreme Court. It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[34] A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[35] This principle applied to federal habeas review of state convictions long before AEDPA.[36] A federal court errs if it interprets a state legal doctrine in a manner that directly conflicts with the state supreme court's interpretation of the law.[37]

---

[34] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone*, 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

[35] *Bradshaw,* 546 U.S. at 76; *see West,* 311 U.S. at 236 ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[36] *See Mullaney,* 421 U.S. at 691 ("state courts are the ultimate expositors of state law").

[37] *See Bradshaw*, 546 U.S. at 76-78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

At the time of the state court decisions in this case, the California "some evidence" rule was embodied in *Rosenkrantz* and *Dannenberg*. Subsequently, the California Supreme Court, applying *Rosenkrantz* and *Dannenberg*, decided *In re Lawrence*[38] and *In re Shaputis*.[39]

In *Rosenkrantz*, the California Supreme Court held:

> [. . . .]  Due process of law requires that [the Board's] decision be supported by some evidence in the record.  Only a modicum of evidence is required.  Resolution of any conflicts in the evidence and the weight to be given the evidence are matters within the authority of the [Board].  [. . . .]  [T]he precise manner in which the specified factors relevant to parole suitability are considered and balanced lies within the discretion of the [Board] . . . .  It is irrelevant that a court might determine that evidence in the record tending to establish suitability for parole far outweighs evidence demonstrating unsuitability for parole.  As long as the [Board's] decision reflects due consideration of the specified factors as applied to the individual prisoner in accordance with applicable legal standards, the court's review is limited to ascertaining whether there is some evidence in the record that supports the [Board's] decision.[40]

The California Supreme Court then held:

> The nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole. (Citations omitted.)  Although the parole authority is prohibited from adopting a blanket rule that automatically excludes parole for individuals who have been convicted of a particular type of offense, the authority properly may weigh heavily the degree of violence used and the amount of viciousness shown by a defendant.  [. . . .]
>
> In some circumstances, a denial of parole based upon the nature of the offense alone might rise to the level of a due process violation—for example where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense.  Denial of parole under these circumstances would be inconsistent with the statutory requirement that a parole date normally shall be set "in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public . . . ."  (Pen.Code, § 3041, subd. (a).)  "The Board's authority to make an exception [to the requirement of setting a parole

---

[38] 190 P.3d 535 (Cal. 2008).

[39] 190 P.3d 573 (Cal. 2008).

[40] *Rosenkrantz*, 59 P.3d at 218.  Quoted with approval in *Shaputis*, 190 P.3d at 585.

date] based on the gravity of a life term inmate's current or past offenses should not operate so as to swallow the rule that parole is 'normally' to be granted. Otherwise, the Board's case-by-case rulings would destroy the proportionality contemplated by Penal Code section 3041, subdivision (a), and also by the murder statutes, which provide distinct terms of life without possibility of parole, 25 years to life, and 15 years to life for various degrees and kinds of murder. (Pen. Code, § 190 et seq.) [¶] Therefore, a life term offense or any other offenses underlying an indeterminate sentence must be particularly egregious to justify the denial of a parole date." ( Citation omitted.)[41]

In *Dannenberg* the California Supreme Court explained:

[. . . .] So long as the Board's finding of unsuitability flows from pertinent criteria, and is supported by "some evidence" in the record before the Board [citing *Rosenkrantz*], the overriding statutory concern for public safety in the individual case trumps any expectancy the indeterminate life inmate may have in a term of comparative equality with those served by other similar offenders. Section 3041 does not require the Board to schedule such an inmate's release when it reasonably believes the gravity of the commitment offense indicates a continuing danger to the public, simply to ensure that the length of the inmate's confinement will not exceed that of others who committed similar crimes.[42]

The California Supreme Court then held:

Thus, there clearly was "some evidence" (citing *Rosenkrantz*) to support the Board's determination that Dannenberg's crime was "especially callous and cruel," showed "an exceptionally callous disregard for human suffering," and was disproportionate to the "trivial" provocation. Accordingly, under *Rosenkrantz,* the Board could use the murder committed by Dannenberg as a basis to find him unsuitable, for reasons of public safety, to receive a firm parole release date.[43]

The Board must, however, "point to factors beyond the minimum elements of the crime

for which the inmate was committed" that demonstrate the inmate will, at the time of the

---

[41] *Id.* 59 at 222; *see Shaputis*, 190 P.3d at 584-85 ("The record supports the Governor's determination that the crime was especially aggravated *and*, importantly, that the aggravated nature of the offense indicates that the petitioner poses a current risk to public safety." (emphasis in the original)).

[42] *Dannenberg*, 104 P.3d at 795.

[43] *Id.* at 803.

suitability hearing, present a danger to society if released.[44]   The Board "may credit evidence

suggesting the inmate committed a greater degree of the offense than his or her conviction

evidences."[45]   In *Lawrence*, however, the California Supreme Court rejected the argument "that

the aggravated circumstances of a commitment offense inherently establish current

dangerousness," holding:

> "[W]e conclude that although the Board and the Governor may rely upon the
> aggravated circumstances of the commitment offense as a basis for a decision
> denying parole, the aggravated nature of the crime does not in and of itself
> provide some evidence of *current* dangerousness to the public unless the record
> also establishes that something in the prisoner's pre- or post-incarceration history,
> or his or her current demeanor and mental state, indicates that the implications
> regarding the prisoner's dangerousness that derive from his or her commission of
> the commitment offense remain probative to the statutory determination of a
> continuing threat to public safety."[46]

This Court must nonetheless determine whether the decisions of the California courts

upholding the Board's denial of parole complied with California law as expressed in *Lawrence*

and *Shaputis*.  Because state court judgments carry a presumption of finality and legality, Love

has the burden of showing by a preponderance of the evidence that he merits habeas relief.[47]

Under AEDPA, the state-court's findings of fact are presumed to be correct unless the petitioner

rebuts this presumption by clear and convincing evidence.[48]   This presumption applies to state

---

[44] *Id.* at 786-87, 802-803; *see Rosenkrantz*, 59 P.3d at 222.

[45] *Dannenberg*, 104 P.3d at 803 n.16 (citing *Rosenkrantz*, 59 P.3d at 219).

[46] 190 P.3d at 554-55; *see Cooke*, 606 F.3d at 1214.

[47] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[48] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

trial courts and appellate courts alike.[49]   As noted above, both the subsidiary findings on the

applicable factors and the ultimate finding of some evidence constitute factual findings.[50]

 With respect to the underlying commitment offense, the applicable regulation provides:

(1) Commitment Offense.  The prisoner committed the offense in an especially
heinous, atrocious or cruel manner.  The factors to be considered include:
 (A) Multiple victims were attacked, injured or killed in the same or
separate incidents.
 (B) The offense was carried out in a dispassionate and calculated manner,
such as an execution-style murder.
 (C) The victim was abused, defiled or mutilated during or after the
offense.
 (D) The offense was carried out in a manner which demonstrates an
exceptionally callous disregard for human suffering.
 (E) The motive for the crime is inexplicable or very trivial in relation to
the offense.[51]

 In finding Love unsuitable for parole, the Board found with respect to the underlying

offense:[52]

 First, this offense was carried out especially cruel and callous manner, in
that on May 8th 1990, the victim, Patricia Churchill, a 33 year [sic] female with a
live fetus was particularly vulnerable, as she was unarmed, 16-20 weeks pregnant.
The inmate enjoyed a special position of trust and confidence with her despite
their history of domestic violence.  On November 11th of 1989 the victim had filed
a domestic violence charge against the inmate.  A witness said she heard sounds
of fighting earlier in the evening of the victim's death.  The inmate has given
multiple versions of the offense.
 When the police arrived at the victim's residence she was bleeding from
her head from a gunshot wound.  None of the neighbors said they heard anything,
but they all identified the inmate as her husband.  The witnesses reported they
fought often.  The offense was carried out in a dispassionate and calculated

---

[49] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

[50] *Cooke*, 606 F.3d at 1216.

[51] Cal. Code. Regs., tit. 15, § 2402(c).

[52] The Alameda County Court did not address the § 2402(c) factors.  Consequently, this
Court reviews the decision of the Board for the factors it relied upon and assumes the Alameda
County Superior Court found them to be adequate.  *See Cooke*, 606 F.3d at 1214.

manner.  This victim was taken to the hospital and placed on life support in an attempt to save the life of the fetus, but she was finally taken off life support after doctors determined the fetus was not viable.

This offense was carried out moreover in a manner demonstrating callous disregard for human suffering, indeed for public safety, and this inmate had a clear opportunity to cease at any point in which he was both calling and/or going to the victim's home.  He could have ceased, but he continued; and he not only continued, but he carried a loaded weapon with him to the scene.

A witness had seen the inmate approximately three weeks before the murder, and the inmate had asked about the victim and then stated, "Revenge is sweet."  And this panel finds that indeed the motive for this killing was very trivial in relation to the offense, and it was revenge.  Initially, the inmate denied the shooting and gave an alibi.  Today, this panel finds that this inmate is not fully credible.  This inmate has shown some attitude of arrogance during this hearing indeed.  And it is not credible to this panel that with an active restraining order against the inmate, he incredibly claims that he forgot it existed, although he was very lucid on the night of this crime.[53]

The Board further observed:

The panel finds it showed complete irresponsibility that this inmate, given his criminal history, was carrying an illegal weapon and claiming it was for protection.  I continue with the doctor's report,
"The inmate states he shot the victim out of anger. He offered that he had been drinking, and he was pushed down the stairs, and he shot back to scare the victim.  The inmate states that he loved her."
Now if he shot to scare the victim, and he loved her, it is only reasonable, a reasonable person would think that one would then say, oh my god, I shot her and rush to her aid.  That didn't happen.  He left.  So sir, your story falls apart.  Even these many years later, you're still expecting this panel to believe that it was an unlucky shot.  And then you said in this hearing, "I made terrible mistake".  Sir, this panel doesn't feel this was a mistake, and it's offensive that you characterize it that way.[54]

The evidence supports a finding that this case falls within the scope of (1)(D) and (E),

and, because the life of the fetus was terminated, probably falls within the scope of (1)(A).[55]

---

[53] Docket No. 14-1, pp. 144-46.

[54] Docket No. 14-1, pp. 146-47.

[55] Under California law, murder includes the death of a fetus.  Cal. Penal Code § 187.  Although it does not appear that Love was charged with, and certainly was not convicted of

16

Under California law, a court neither re-weighs the evidence nor substitutes it's discretion for that of the Board.  Judicial review of a decision denying parole is "extremely deferential."[56] Thus, under *Rosenkrantz* and *Dannenberg*, this Court could not say that the decision of the Alameda County Superior Court was contrary to, or involved an unreasonable application of California law at the time it was decided, or was based on an unreasonable determination of the facts in light of the evidence.  On the other hand, because *Hayward*, *Pearson*, and *Cooke* require that *Lawrence* and *Shaputis* be applied, this Court must look to determine whether there was some factor in addition to the underlying commitment offense to support denial of parole.

The Board relied on the following additional factors:

> This inmate's history shows previous violence, assaults and prior criminality that shows an escalating pattern of criminal conduct.  This inmate has failed society [*sic*] previous attempts to correct his criminality, including adult probation and time in the county jail for crimes including assault and battery, burglary, reckless driving, theft and multiple DUI's, and firearm offenses.[57]

Pre-conviction criminal history is a proper factor to be considered under California law.[58]  Except with respect to his parole plans, discussed below, Love does not dispute the adequacy of the evidence to support the findings of the Board and the Superior Court.  Instead, Love argues that the Board and the Alameda County Superior Court did not give sufficient consideration to the *positive* factors.  Distilled to its essence, Love's argument goes to the weight the Board gave the

---

murder in the death of the fetus, the Board nonetheless properly relied on the death of the fetus in denying parole.  *See Dannenberg*, 104 P.3d at 803 n.16 (citing *Rosenkrantz*, 59 P.3d at 219).

[56] *Rosenkrantz*, 59 P.3d at 210.

[57] Docket No. 14-1, p. 141.

[58] Cal. Code Regs., tit 15, § 2402(c)(2) ("Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.").

factors, both positive and negative.  Nothing in California law permits, let alone mandates, that

this Court re-weigh the evidence or substitute its discretion for that of the Board.  The governing

regulation establishing the criteria for parole release specifically provides that, with respect to the

circumstances tending to show unsuitability:  "The following circumstances each tend to indicate

unsuitability for release.  These circumstances are set forth as general guidelines; *the importance

attached to any circumstance or combination of circumstances in a particular case is left to the

judgment of the panel.*"[59]  This Court must defer to the judgment of the Board.[60]

At least one of the additional factors relied upon by the Board and the California

courts—the escalating prior history of violence, was sufficient to satisfy the requirements of

*Lawrence* and *Shaputis*, as interpreted by the Ninth Circuit in *Hayward*, *Cooke*, and *Pirtle*.  Thus,

this Court cannot say that the decision of the Alameda County Superior Court was contrary to, or

involved an unreasonable application of the California some evidence rule, or was based on an

unreasonable determination of the facts in light of the evidence presented to those courts.

Consequently, Love is not entitled to relief under his second ground.

Ground 3:  Violation of Administrative Procedures Act

In denying Love parole, the Board determined that Love's parole plans were not

comprehensive and robust.[61]  Like the first ground, the Alameda County Superior Court did not

address this ground in its petition.  Thus, like the first ground, this Court must review the

---

[59] Cal. Code Regs., tit. 15, § 2402(c) (emphasis added).

[60] *Rosenkrantz*, 59 P.3d at 210.

[61] Docket No. 14-1, p. 143.

decision de novo, giving the assumed decision of the Alameda County Superior Court the same deference as a reasoned decision.[62]

A question of agency rule-making authority under the California Administrative Procedures Act is a matter of state law beyond the purview of this Court in a federal habeas proceeding.  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[63]  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[64]  This principle applied to federal habeas review of state convictions long before AEDPA.[65]  A federal court errs if it interprets a state legal doctrine in a manner that directly conflicts with the state supreme court's interpretation of the law.[66]  A determination of state law by a state intermediate

---

[62] *Reynoso*, 462 F.3d at 1109; *Degaldo II*, 223 F.3d at 982; *Pirtle*, 313 F.3d at 1167.

[63] *See Estelle*, 502 U.S. at 67-68 (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton,* 497 U.S. at 653 (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring*, 536 U.S. 584; *see also Engle*, 456 U.S. at 119 (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell*, 543 U.S. at 455 (a federal court may not lightly presume that a state court failed to apply its own law).

[64] *Bradshaw,* 546 U.S. at 76; *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[65] *See Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law").

[66] *See Bradshaw*, 546 U.S. at 76-78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

appellate court is also binding in a federal habeas action.[67]  This is especially true where the highest court in the state has denied review of the lower court's decision.[68]

A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[69]  Nor may a federal court issue a habeas writ based upon a perceived error of state law, unless the error is sufficiently egregious to amount to a denial of due process under the Fourteenth Amendment.[70]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[71]  "'Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.'"[72]  Love has failed to raise an issue of constitutional dimension. Furthermore, in a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal proceeding is whether the error had a substantial and injurious effect or influence in determining the outcome.[73]  Because the Board properly relied on at least one other factor, even if it were error for the Board to have

---

[67] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[68] *Id.*; *see West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

[69] *Langford v. Day,* 110 F.3d 1380, 1389 (9th Cir. 1996).

[70] *See Pulley v. Harris*, 465 U.S. 37, 41 (1984) (*dictum*).

[71] *Lewis*, 497 at 780 (quoting *Donnelly*, 416 U.S. at 643).

[72] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)); *see Wainwright v. Goode*, 464 U.S. 78, 86 (1983) (per curiam).

[73] *Fry*, 551 U.S. at 121 (adopting the standard set forth in *Brecht*, 507 U.S. at 637-38).

relied on the lack of an adequate parole plan, that error was harmless.  Love is not entitled to relief under his third ground.

## V.  CONCLUSION AND ORDER

Love is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[74]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[75]

The Clerk of the Court is to enter final judgment accordingly.

Dated:  January 6, 2010.

_____/s/ James K. Singleton, Jr._____
JAMES K. SINGLETON, JR.
United States District Judge

---

[74] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).

[75] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.